IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**ELISEO LOPEZ,**

      **Plaintiff,**

      **vs.**                                                        **Civ. No. 14-735  KK**

**SOCIAL SECURITY ADMINISTRATION,**
Carolyn W. Colvin, Acting Commissioner,

      **Defendant.**

## MEMORANDUM OPINION AND ORDER[1]

**THIS MATTER** is before the Court on Plaintiff's Motion to Reverse and Remand for Rehearing, With Supporting Memorandum ("Motion"), filed on April 15, 2015.  (Doc. 18.)  The Commissioner of Social Security ("Commissioner") filed a Response on July 15, 2015 (Doc. 22), and Plaintiff filed a Reply on August 11, 2015.  (Doc. 25.)  Having meticulously reviewed the entire record and being fully advised in the premises, the Court finds the Motion is well taken and is **GRANTED.**

### I. Standard of Review

Judicial review in a Social Security appeal is limited in scope by 42 U.S.C. § 405(g) to two inquiries: first, whether substantial evidence supports the Commissioner's final decision[2]; and second, whether the correct legal standards were applied.  *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (quotation omitted).  If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to Magistrate Judge Kirtan Khalsa to conduct any or all proceedings, and to enter an order of judgment, in this case.  (Docs. 6, 10.)

[2] A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which is generally the ALJ's decision.  20 C.F.R. §§ 404.981, 416.1481.  This case fits the general framework, and therefore, the Court reviews the ALJ's decision as the Commissioner's final decision.

decision stands and the plaintiff is not entitled to relief.  *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004).  "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal."  *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted).  Courts must meticulously examine the entire record, but may neither reweigh the evidence nor substitute their judgment for that of the Commissioner.  *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Langley*, 373 F.3d at 1118.  A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it."  *Id.*  While the court may not reweigh the evidence or try the issues *de novo*, its examination of the record as a whole must include "anything that may undercut or detract from the [Commissioner's] findings in order to determine if the substantiality test has been met."  *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005).  "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence."  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. Fed. Aviation Admin.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## II. Applicable Law and Sequential Evaluation Process

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment."  42 U.S.C. § 423(d)(1)(A).  A claimant is disabled under the Act if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any

other kind of substantial gainful work in the national economy." 42 U.S.C. § 423(d)(2)(A). To qualify for disability insurance benefits, a claimant must establish a severe physical or mental impairment expected to result in death or to last for a continuous period of twelve months, which prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. §423(d)(1)(A); *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993).

When considering a disability application, the Commissioner uses a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show that: (1) he is not engaged in "substantial gainful activity"; *and* (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) his impairment(s) meet or equal one of the Listings[3] of presumptively disabling impairments; *or* (4) he is unable to perform his "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i-iv), 416.920(a)(4)(i-iv); *Grogan* 399 F.3d at 1261. If the claimant cannot show that his impairment meets or equals a Listing, but he proves that he is unable to perform his "past relevant work," the burden of proof then shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering his residual functional capacity ("RFC"), age, education, and work experience. *Grogan*, 399 F.3d at 1261.

Although the claimant bears the burden of proving disability in a Social Security case, because such proceedings are nonadversarial, "[t]he ALJ has a basic obligation in every social security case to ensure that an adequate record is developed during the disability hearing consistent with the issues raised." *Henrie v. U.S. Dep't of Health & Human Servs.*, 13 F.3d 359, 360-61 (10th Cir. 1993); *Madrid v. Barnhart*, 447 F.3d 788, 790 (10th Cir. 2006). "This is true

---

[3] 20 C.F.R. pt. 404, subpt. P. app. 1.

3

despite the presence of counsel." *Henrie*, 13 F.3d at 361. "The duty is one of inquiry and factual development," *id.*, "to fully and fairly develop the record as to material issues." *Hawkins v. Chater*, 113 F.3d 1162, 1167 (10th Cir. 1997). This may include, for example, an obligation to obtain pertinent medical records or to order a consultative examination. *Madrid*, 447 F.3d at 791-92. The duty is triggered by "some objective evidence in the record suggesting the existence of a condition which could have a material impact on the disability decision requiring further investigation." *Hawkins*, 113 F.3d at 1167.

### III. Background and Procedural Record

Plaintiff Eliseo Lopez ("Mr. Lopez") was born on August 29, 1967. (Tr. 142, 149.[4]) Mr. Lopez completed a GED in 1985. (Doc. 186.) Mr. Lopez's work history for the past fifteen years included work as a plumber's assistant, warehouse laborer, welder, and maintenance worker. (Tr. 193-97.)

On March 28, 2011, Mr. Lopez protectively filed[5] an application for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401, and concurrently filed an application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1382(a)(3). (Tr. 68, 69, 142-48, 149-55.) Mr. Lopez alleged a disability onset date of March 17, 2011, because of fibromyalgia, osteoarthritis, rheumatoid arthritis, herniated disk, nerve pain, transient ischemic attack, and kidney stones.

---

[4] Citations to "Tr." are to the Transcript of the Administrative Record (Doc. 14) that was lodged with the Court on October 17, 2014.

[5] Protective Filing Status is achieved once an individual contacts the Social Security Administration with the positive stated intent of filing for Social Security Disability benefits. The initial contact date is considered a claimant's application date, even if it is earlier than the date on which the Social Security Administration actually receives the completed and signed application. *See* 20 C.F.R. §§ 404.614, 404.630, 416.325, 416.340, 416.345.

(Tr. 185.) Mr. Lopez has not engaged in substantial gainful activity since his alleged disability onset date. (Tr. 12.) Mr. Lopez's date of last insured was December 31, 2015.[6] (Tr. 10, 12.)

Mr. Lopez's applications were initially denied on July 22, 2011. (Tr. 87-90, 91-94.) At reconsideration on August 15, 2011, Mr. Lopez reported no change in his current illnesses, and a new illness of sleep apnea. (Tr. 202-10.) Mr. Lopez's applications were denied again at reconsideration on November 3, 2011. (Tr. 98-103.) On November 14, 2011, Mr. Lopez requested a hearing before an Administrative Law Judge ("ALJ"), and the ALJ conducted a hearing on September 11, 2012. (Tr. 25-59, 105-06.) Mr. Lopez appeared in person at the hearing with his attorney Michelle Baca. (*Id.*) The ALJ took testimony from Mr. Lopez (Tr. 30-47) and an impartial vocational expert ("VE"), Karen Provine. (Tr. 47-56.)

On April 5, 2013, the ALJ issued an unfavorable decision. (Tr. 7-19.) At step one, he found that Mr. Lopez had not engaged in substantial gainful activity since his alleged onset date. (Tr. 12.) The ALJ therefore proceeded to step two and found that Mr. Lopez suffered from the following severe impairments: "hypertension, mild obstructive sleep apnea, generalized osteoarthritis, history of transient ischemic attack (TIA), mild osteoarthritis of the hands, obesity, nasal obstruction, myofascial pain syndrome, history of fibromyalgia, and depression."[7] (*Id.*) At step three, the ALJ concluded that Mr. Lopez did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 13.)

---

[6] To receive benefits, Mr. Lopez must show he was disabled prior to his date of last insured. *See Potter v. Sec'y of Health & Human Servs.*, 905 F.2d 1346, 1347 (10th Cir. 1990).

[7] Although Mr. Lopez did not initially identify depression as a cause of his disability in his March 28, 2011 application, the issue of his depression was properly before the ALJ because Mr. Lopez presented evidence through medical records and testimony upon which the ALJ's step two depression finding is based. *See Carter v. Chater*, 73 F.3d 1019, 1021-22 (10th Cir. 1996); (Tr. 42, 211-18, 382, 388, 396, 399-401, 406-08, 411-15, 420.)
.

Because he found that Mr. Lopez's impairment did not meet a Listing, the ALJ went on to assess Mr. Lopez's RFC at step four. The ALJ stated that

> [a]fter careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform the full range of medium work as defined in 20 CFR 404.1567(a) and 416.967(a). Specifically, the claimant can lift and carry fifty pounds occasionally and twenty-five pounds frequently. The claimant can stand and/or walk about six hours in an eight-hour workday and he can sit for at least six hours in an eight-hour workday. The claimant can push and/or pull fifty pounds occasionally and twenty-five pounds frequently. He can frequently balance, stoop, kneel, crouch, crawl, climb ramps and stairs, and can only occasionally climb ladders, ropes, and scaffolds. The claimant should avoid all concentrated exposure to hazards (i.e., machinery, unprotected heights, etc[.]). In addition, the claimant is limited to work which requires only simple tasks, with simple instructions. He can maintain adequate concentration and attention for up to two hours at a time before taking a normally scheduled break, and then returning to work for the next two hours.

(Tr. 14-15.) The ALJ concluded that Mr. Lopez was able to perform his past relevant work as a warehouse laborer. (Tr. 18.) For this reason, the ALJ did not proceed to step five.

On June 20, 2014, the Appeals Council issued its decision denying Mr. Lopez's request for review and upholding the ALJ's final decision. (Tr. 1-3.) In reviewing his case, the Appeals Council considered a brief submitted by Ms. Baca summarizing the arguments before the Appeals Council. (Tr. 5, 236-42.) On August 18, 2014, Mr. Lopez timely filed the instant action seeking judicial review of the Commissioner's final decision. (Doc. 1.)

## IV. Analysis

Mr. Lopez makes three arguments in support of reversing and remanding his case, as follows:

(1) the ALJ's RFC assessment is flawed because it fails to consider the limitations that result from Mr. Lopez's rheumatoid arthritis, osteoarthritis, and depression; (2) the ALJ erred at step four by failing to inquire as to the physical and mental demands of Mr. Lopez's past relevant work; and, (3) the ALJ abrogated his duty to develop the record despite clear evidence

demonstrating that Mr. Lopez suffers from and has been diagnosed with depression. (Doc. 18 at 1-2.) Because the Court finds grounds to remand as discussed below, the Court does not specifically analyze all of Mr. Lopez's arguments.

### A. ALJ's Evaluation of Mr. Lopez's Mental Impairments

#### 1. Step Two Findings

At step two, an ALJ is required to evaluate a claimant's mental impairment utilizing the special technique described in 20 C.F.R. §§ 404.1520a and 416.920a. In so doing, the ALJ first determines, based on record evidence, whether a claimant has a medically determinable impairment. 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1). The ALJ next considers four broad functional areas[8] and determines the degree of functional limitation resulting from the mental impairment. 20 C.F.R. §§ 404.1520a(b)(2), 416.920a(b)(2). To complete this step, the ALJ rates the degree of limitation in the first three areas as none, mild, moderate, marked, or extreme, and the degree of limitation in the fourth area using a numerical scale of either none, one or two, three, or four or more. 20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4). After the ALJ rates the degree of functional limitation, the ALJ determines the severity of the mental impairment. 20 C.F.R. §§ 404.1520a(d); 416.920a(d). If an ALJ determines that a mental impairment is severe, the ALJ must then determine if it meets or equals a listed impairment. 20 C.F.R. §§ 404.1520a(d)(2), 416.920a(d)(2). Finally, if the ALJ finds that a claimant has a severe mental impairment that does not meet or equal a listed impairment, the ALJ must then assess a claimant's RFC. 20 C.F.R. §§ 404.1520a(d)(3); 416.920a(d)(3).

Here, the ALJ determined that Mr. Lopez had a medically determinable mental impairment of depression. (Tr. 12.) He then determined that Mr. Lopez's depression would

---

[8] The four functional areas are: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. §§ 404.1520a(c)(3); 416.920a(c)(3).

cause him no more than "mild" limitations in his activities of daily living and social functioning, "moderate" limitations in the area of concentration, persistence, or pace, and "no" limitations in the fourth area, episodes of decompensation. (Tr. 13-14.) Based on these limitations, the ALJ determined that Mr. Lopez's depression was severe. (Tr. 12.) However, the ALJ concluded that Mr. Lopez's depression did not meet or equal a listed impairment because he had not found at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation. (Tr. 13.)

### 2. RFC Assessment at Step Four

In assessing a claimant's RFC at step four, the ALJ must consider the combined effect of all of the claimant's medically determinable impairments, and review all of the evidence in the record. *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013); *see* 20 C.F.R. §§ 404.1545(a)(2) and (3), 416.945(a)(2) and (3). Most importantly, the ALJ's "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." *Wells*, 727 F.3d at 1065 (quoting SSR 96-8p, 1996 WL 374184, at *7). When the ALJ fails to provide a narrative discussion describing how the evidence supports each conclusion, citing to specific medical facts and nonmedical evidence, the court will conclude that his RFC conclusions are not supported by substantial evidence. *See Southard v. Barnhart*, 72 F. App'x 781, 784-85 (10th Cir. 2003). The ALJ's decision must be sufficiently articulated so that it is capable of meaningful review. *See Spicer v. Barnhart*, 64 F. App'x 173, 177-78 (10th Cir. 2003). The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment of a claimant's "ability to understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with

changes in a routine work setting." *Wells*, 727 F.3d at 1069 (quoting SSR 96-8p, 1996 WL 374184, at *4).

Here, the ALJ failed to provide a narrative discussion to support his mental RFC assessment. In his RFC analysis, the ALJ stated that "claimant receives mental health treatment from Kenneth Bull, M.D., for his depression," and that "[t]reatment notes imply the claimant has experienced depressive symptoms for over three years." (Tr. 17.) Excluded from the ALJ's RFC analysis is any discussion regarding the specific psychological abnormalities associated with Dr. Bull's diagnoses.[9] (Tr. 411-15.) In the absence of a narrative discussion, the Court is uncertain whether the ALJ's nonexertional work-related mental limitations[10] are based on Mr. Lopez's depression or one of his physical impairments with symptoms that may cause nonexertional limitations, such as his sleep apnea[11] or fibromyalgia.[12] *See* SSR 96-8p, WL 374184, at *6 (stating that a claimant's symptoms, including pain, are not intrinsically exertional or nonexertional and may cause both exertional and nonexertional limitations). Moreover, because the ALJ's step four discussion of Mr. Lopez's mental impairment is lacking, it appears the ALJ may have relied solely on his step two findings as a substitute for an adequate RFC

---

[9] Dr. Bull noted on July 23, 2012, that Mr. Lopez presented with symptoms of constant worry, fearful feelings, worthless feelings, hopelessness, negative thinking, trouble concentrating, memory problems, irritability, sleep change, increased/decreased appetite, eating disorder, depression, frequent crying, decreased sex drive, weakness, excessive guilt, fear of losing control, fear of going crazy, and mood swings. (Tr. 415.) Dr. Bull diagnosed Mr. Lopez with major depressive disorder, obsessive-compulsive disorder, and attention deficit disorder. (*Id*.)

[10] The ALJ limited Mr. Lopez to "work which requires only simple tasks, with simple instructions," and found that "he can maintain adequate concentration and attention for up to two hours at time[.]" (Tr. 15.)

[11] Sleep deprivation leads to lower alertness and concentration. http://www.webmd.com/sleep-disorders/excessive-sleepiness-10/emotions-cognitive. It is more difficult to focus and pay attention. *Id.* This hampers your ability to perform tasks that require logical reasoning or complex thought. *Id.* On July 6, 2011, Mr. Lopez reported to Dr. Audrey Wells of OmniSleep Medicine Centers that he experienced excessive daytime sleepiness. (Tr. 343.) Mr. Lopez also testified that he sleeps about five hours during the day due to poor nighttime sleep. (Tr. 35.)

[12] People with fibromyalgia may have nonexertional physical or mental limitations because of their pain or other symptoms. *See* SSR 12-2P, 2012 WL 3104869, at *6. Mr. Lopez testified that fibromyalgia is one of the causes of his joint pain, and that he understands it can also cause his fatigue. (Tr. 37-38, 43.)

analysis.[13]  The limitations identified at step two are not an RFC assessment.  *Wells v. Colvin*, 727 F.3d 1062, 1069 (10th Cir. 2013).  Rather, they inform an ALJ's conclusions at steps two and three of the five-step analysis.  20 C.F.R. §§ 404.1520a(d), 416.920a(d).  "[T]he Commissioner's regulations demand a more thorough analysis [at step four]."  *Wells*, 727 F.3d at 1071 (citing §§ 404.1545(a)(2), 416.945(a)(2)).  Determining the impact of a mental disorder on an individual's capacity to perform and sustain mental activities which are critical to work performance must be demonstrated through a detailed assessment.  SSR 85-16, 1985 WL 56855, at *1.  Here, the ALJ failed to discuss how Mr. Lopez's mental impairment impacts his ability to perform and sustain mental activities which are critical to work activities in an ordinary work setting on a regular and continuing basis, eight hours a day for five days a week.  SSR 96-8p, 1996 WL 374184, at *7.[14] For these reasons, the ALJ's RFC mental assessment is not supported by substantial evidence.  This is reversible error.

### 3. ALJ's Alleged Credibility Assessment

The Commissioner argues that Mr. Lopez's reliance on his subjective psychological symptoms to suggest the ALJ erred in assessing his mental residual functional capacity is

---

[13] *See* Section A.1. Step Two Findings, *supra*.

[14] Notably, the only determination the ALJ made involved Mr. Lopez's ability to drive, which he found

> demonstrate[d] that he ha[d] the mental capacity to understand and comply with the applicable traffic laws and regulations.  In addition, it indicate[d] that the claimant [was] able to remember the directions to and from any desired destinations.

(Tr. 18.) However, substantial evidence does not support this determination. On July 6, 2011, Mr. Lopez reported to Dr. Wells that he frequently had difficulty with sleepiness while driving. (Tr. 343.) On September 6, 2011, Mr. Lopez reported in his Adult Function Report that he only drives within his neighborhood because he is scared to go out alone because he has fallen asleep behind the wheel "many times" due to his sleep apnea. (Tr. 214.) On September 11, 2012, Mr. Lopez testified that besides going to his doctor appointments, he may pick up emergency groceries. (Tr. 38-39.) He further testified that he sometimes takes his son to his doctor appointments, but that Safe Ride also takes his son to his doctor appointments. (*Id.*) Thus, the record indicates that Mr. Lopez's ability to drive is not only limited, but also fraught with anxiety. In any event, considering the record as a whole, Mr. Lopez's ability to drive, limited or not, does not present a reliable benchmark for determining his capacity to perform and sustain mental activities which are critical to work performance.

misplaced and begs the question of credibility.  (Doc. 22 at 12.)  However, the error is the ALJ's omission of any narrative discussion regarding Mr. Lopez's psychological symptoms at step four in his RFC analysis.  Further, to the extent the Commissioner is suggesting that the ALJ considered Mr. Lopez's psychological symptoms and found them incredible, the Court will not adopt the Commissioner's post-hoc rationalization for the ALJ's lack of findings that are not apparent from the ALJ's decision itself.  *Watkins*, 350 F.3d at 1301; *Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007) (finding the court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision).  The Court is unable to glean a credibility finding addressing Mr. Lopez's statements concerning the intensity, persistence, and limiting effect of his symptoms related to his depression, much less one that is "closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings."  *Wilson v. Astrue*, 602 F.3d 1136, 1144 (10th Cir. 2010) (quoting *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (internal quotation omitted)); *see also* SSR 96-7p, 1996 WL 374186, at *2 (instructing that a credibility assessment must contain specific reasons and be supported by the evidence in the case record).

### B. Duty to Develop the Record

Mr. Lopez also argues that the ALJ should have ordered a consultative mental examination based on the evidence in the record of his major depressive disorder.  (Doc. 18 at 23-25.)  The Court agrees.  Here, the record evidence revealed the presence of a number of specific psychological abnormalities associated with Dr. Bull's diagnoses.  (Tr. 411-15.)  Moreover, as the Commissioner points out, Dr. Bull's records do not reflect mental functional examination findings.[15]  (Doc. 22 at 13.)  The absence of these findings, given the other evidence in this case, triggered an obligation on the part of the Commissioner to fully and fairly develop

---

[15] The Court notes that the medical record evidence does not contain any mental functional examination findings.

11

the record regarding the severity and limiting effects of Mr. Lopez's mental impairment. As noted above, "objective evidence . . . suggesting the existence of a condition which could have a material impact on the disability decision requiring further investigation" triggers an obligation for the Commissioner's designees to "fully and fairly develop[] the record as to material issues." *Hawkins*, 113 F.3d at 1167. The ALJ did not satisfy that obligation here. This is also reversible error.

## V. Conclusion

For the reasons stated above, Mr. Lopez's Motion to Reverse or Remand for Rehearing is **GRANTED.** This matter is remanded for further proceedings consistent with the Court's findings.

_____
**KIRTAN KHALSA**
**United States Magistrate Judge,**
**Presiding by Consent**